IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAMES B.**,[1]<br><br>    Plaintiff,<br><br>v.<br><br>**KILOLO KIJAKAZI**, Acting Commissioner of Social Security,[2]<br><br>    Defendant. | Case No. 3:20-cv-01676-IM<br><br>**OPINION AND ORDER** |

Lisa Rene Lang, Johnston Porter Law Office, PC, 5200 SW Meadows Road, Suite 150, Lake Oswego, OR 97035. Attorney for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Assistant United States Attorney, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204; Ryan Ta Lu and Kelly Arefi, Special Assistant United States Attorneys, Office of General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**IMMERGUT, District Judge**

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration, is substituted for Andrew Saul as Defendant. *See* Fed. R. Civ. P. 25(d).

PAGE 1 – OPINION AND ORDER

Plaintiff James B. seeks review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the following reasons, this Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039). "This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

If the evidence is "susceptible to more than one rational interpretation," the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born in 1971. AR 24, 263. He has past relevant work as a project manager. *Id.* Plaintiff filed applications for DIB and SSI on April 10, 2018, alleging disability since February 28, 2018. AR 15. He was 46 years old on the alleged onset date.

Plaintiff's application was denied initially and upon reconsideration. AR 335–40; 342–44. Plaintiff requested a hearing. AR 348–49. Plaintiff appeared with counsel at an administrative hearing on January 2, 2020, before Administrative Law Judge ("ALJ") Elizabeth Watson. AR 225.

On January 21, 2020, the ALJ issued a decision finding that Plaintiff had not been "under a disability within the meaning of the Social Security Act" since February 28, 2018, the date the application was filed. AR 15–25. On February 22, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council. AR 4, 396–98. On August 18, 2020 the Appeals Council denied the request for review making the ALJ's decision the Commissioner's final administrative decision in this case. AR 1–6. Plaintiff now seeks review of the Commissioner's decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

PAGE 3 – OPINION AND ORDER

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

PAGE 4 – OPINION AND ORDER

> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*Id. See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 146, n. 5. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1098, 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1099, 1100; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 28, 2018, the alleged onset date. AR 18. The ALJ found at step two that Plaintiff "has the following severe impairments: affective disorder; anxiety related disorder; bipolar I disorder." *Id*. The ALJ concluded at step three that none of Plaintiff's impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 19. The ALJ further found that Plaintiff

PAGE 5 – OPINION AND ORDER

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to understanding and carrying out simple instructions. He is limited to no contact with the general public and occasional contact with coworkers and supervisors.

AR 20. The ALJ found at step four that Plaintiff had past relevant work as a project manager but that he could not perform the past relevant work as actually or generally performed. AR 24. Finally, at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, as well as the testimony from a Vocational Expert ("VE"). AR 24–25. The ALJ concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform. AR 25. The ALJ identified the following potential jobs: (1) machine packager, DOT 920.685-078; (2) electrical accessories assembler, DOT 729.687-010; and (3) small products assembler, DOT 739.687-030. AR 25. For these reasons, the ALJ concluded that Plaintiff had not been disabled since February 28, 2018. *Id*.

## DISCUSSION

### A. Substantial Evidence Supports the ALJ's Credibility Determination Regarding Plaintiff's Symptom Testimony

#### 1. Legal standards

There is a two-step process used in the Ninth Circuit for evaluating a claimant's testimony about the severity and effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause

the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the [plaintiff] meets this first test, and there is no evidence of malingering, 'the ALJ can reject the [plaintiff's] testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. Even still, the ALJ may not reject testimony "solely because" the claimant's symptom testimony "is not substantiated by objective medical evidence." *Robbins*, 466 F.3d at 883.

**2. Analysis**

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but concluded that Plaintiff's "allegations of debilitating symptoms are not consistent with the treatment record." AR 21. Specifically, the ALJ cited Plaintiff's ability to sustain a part-time job, the treatment records showing that Plaintiff has not required hospitalizations or other intensive treatment interventions since the alleged onset date, and his unremarkable mental status examination results. *Id.* at 21–22. These are clear and convincing reasons for rejecting Plaintiff's symptom testimony.

PAGE 7 – OPINION AND ORDER

First, an ALJ may consider a claimant's activities when evaluating the reliability of their symptom allegations. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Plaintiff's part-time work is one such activity. It does not matter that Plaintiff only maintained a part-time work schedule because "an ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). As the ALJ noted, "[a]lthough [Plaintiff] testified that he could not work more hours due to his anxiety, he reported to his treatment provider that he had talked to his boss about not working too many hours in order to avoid losing his Oregon Health Plan." AR 22 (citing AR 2411). Plaintiff's statement to his treatment provider undermines the reliability of Plaintiff's allegations that his disability caused him to work part-time. This Court also notes that, contrary to Plaintiff's assertion in his reply brief that he worked either one or seven hours per week, ECF 21 at 4, 7, Plaintiff testified before the ALJ that he worked "[s]ixteen to 20" hours per week and "four to six hours a day." AR 230, 232. Accordingly, the ALJ reasonably concluded that Plaintiff's ability to work part-time was inconsistent with his claims that his mental impairments were debilitating. *See Burch*, 400 F.3d at 679.

Second, an ALJ may consider the amount and type of medication and treatment in evaluating the intensity and persistence of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Evidence that medication can help relieve symptoms can undermine a claim of disability. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Here, the ALJ noted that, while Plaintiff required "periodic medication adjustments," his mental impairment "appear[ed] well-controlled since his alleged onset date" and he required "no hospitalizations or other intensive treatment interventions." AR 22. The record evidence thus showed that Plaintiff's medication regimen was relieving his most severe symptoms.

Third, an ALJ must consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by [] medical sources or other persons about how [the claimant's] symptoms affect [them]." 20 C.F.R. §§ 404.1429(c)(4), 416.929(c)(4); *see also Chaudhry v. Astrue*. 688 F.3d 661, 671 (9th Cir. 2012). Here, the ALJ noted that Plaintiff's mental status exams revealed "very mild dysphoria and mildly restricted affect with regular speech, linear thought process, intact cognition and good insight and judgment." AR 22 (citing AR 2278, 2318, 2382, 2412). In addition, Plaintiff's providers noted repeatedly that he was "[d]oing reasonably well psychiatrically." AR 2278, 2318, 2341. In short, the ALJ reasonably evaluated the record evidence that conflicted with Plaintiff's assertion that he could not work and was a danger to himself and others.[3]

## B. The ALJ's Failure to Address Plaintiff's Mother's Statement was Harmless Error

### 1. Legal standards

Lay witnesses "in a position to observe a claimant's symptoms and daily activities are competent to testify," and the ALJ must consider their testimony. *Dodrill*, 12 F.3d at 918–19. An ALJ may discount lay witness testimony only by providing reasons germane to each witness. *Id*.

---

[3] Plaintiff argues that the ALJ "willful[ly] ignore[ed]" the repeated psychiatric hospitalizations that occurred before the onset date and therefore "cherry-picked only evidence that demonstrated a narrative that [he] was doing well." ECF 18 at 6. But, as Defendant notes, the ALJ did not ignore the hospitalizations, but discussed them in detail and noted that the hospitalizations predated the onset date and that no hospitalization or other intensive intervention had been needed since the onset date. AR 21–22. What is more, Plaintiff testified that he had not missed work because of mental health symptoms and that his anxiety and depression affected his work only insofar as he would take additional breaks—which he could "hide . . . pretty well"—to "just walk the aisles, and try to breathe." AR 238–39.

at 919; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).[4] The Ninth Circuit has determined that "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (alterations in original) (quoting *Buckner v. Astrue,* 646 F.3d 549, 560 (8th Cir. 2011)); *see also id.* ("Because the ALJ had validly rejected all the limitations described by the lay witnesses in discussing [Plaintiff's] testimony, we are confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination.").

2. **Analysis**

Plaintiff's mother completed a third-party Function Report. AR 469. In it, she wrote that "[a]lthough willing and eager to work[,] [Plaintiff] has shown over the last few attempts at employment that his anxiety + mania tend to take over and leave him unable to perform what would otherwise be to him simple [tasks]." *Id*. Plaintiff's mother also wrote that he managed to attend appointments, do chores, care for his ill father, and help take care of pets. AR 470–71. Plaintiff also prepared his own meals—though he cooked less than before his disability—and did not need reminders to take medicine or take care of personal needs. AR 471. Although Plaintiff

---

[4] Regulations applicable to SSI claims filed after March 27, 2017—including Plaintiff's— state that an ALJ is "not required to articulate how [she] considered evidence from nonmedical sources." 20 C.F.R. §§ 404.1520c(d), 416.920c(d). The Ninth Circuit has not yet addressed whether the new regulations upend the Ninth Circuit rule requiring germane reasons for discounting lay witness testimony. *See Robert U. v. Kijakazi*, No. 3:20-cv-1817-SI, 2022 WL 326166, at *7 (D. Or. Feb. 3, 2022) (noting that the Ninth Circuit has not addressed the question and that courts in this district are split, but concluding that "the ALJ must continue to give germane reasons for discounting lay witness testimony" because the new regulations did not unambiguously remove the obligation). Defendant seems to concede that the Ninth Circuit's precedent still applies. *See* ECF 20 at 9 ("An ALJ should give germane reasons to reject lay witness testimony." (internal citation omitted)).

could not drive due to a suspended license, his mother reported that he left the house daily and was able to walk, ride in a car, or take public transportation. AR 472. Plaintiff's mother noted that he "became more introverted" after his condition began, but also noted that he did not have problems getting along with family, friends, neighbors, or others and followed written and oral instructions. AR 473–74. Plaintiff's mother did note issues with memory, completing tasks, and concentration, as well as issues getting along with authority figures, handling stress, or coping with routine changes. AR 475.

Defendant argues that "it is reasonable to infer that the ALJ did not expressly discuss [Plaintiff's mother's] statement because she adequately accommodated her opinion in the RFC." ECF 20 at 10. And it is true that the ALJ concluded that "[w]ith regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation." AR 19. But the ALJ did not give germane reasons for disregarding the portion of the statement that referenced Plaintiff's troubles completing tasks, getting along with authority figures, and handling stress or routine changes. These are aspects of Plaintiff's mental health disability that might impact his ability to maintain gainful employment and it was error not to address them.

Such error was harmless, though, because an ALJ may rely on the same reasons she gave for discounting a claimant's credibility when a lay witness gives similar testimony. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). As noted above, the ALJ appropriately articulated what record evidence contradicted Plaintiff's claims of disability and inability to work a full schedule.[5] To the extent that Plaintiff's mother's statement conflicted

---

[5] The ALJ also used Plaintiff's mother's function report itself as evidence that Plaintiff's daily activities reflected stability in his medications and lessening of his symptoms during the relevant period. AR 23 (citing AR 470–72). While this is not by itself a germane reason to reject the third-party report in its entirety, it reflects that the ALJ read and considered the report.

PAGE 11 – OPINION AND ORDER

with mental status examinations that the ALJ relied on, AR 22 (citing AR 2278, 2318, 2382, 2412), "[i]nconsistency with medical evidence is [a germane] reason" for an ALJ to reject lay opinion testimony, *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

## C. Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinion Evidence

### 1. Legal standards

For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). To that end, there is no longer any inherent extra weight given to the opinions of treating physicians. Instead, the ALJ considers the "supportability" and "consistency" of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are. *Id.* §§ 404.1520c(c), 416.920c(c). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* §§ 404.1520c(b), 416.920c(b). The ALJs are not required to explain how they considered other secondary medical factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(3); 416.920c(b)(3).

Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] . . . the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). Likewise, "[t]he more consistent a medical opinion[] . . . is

PAGE 12 – OPINION AND ORDER

with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

### 2. Analysis

Plaintiff argues that the ALJ's analysis of medical opinions from three medical sources was not supported by substantial evidence such that a remand is required. ECF 18 at 10. First, the ALJ found unpersuasive the opinion of Ian Starr, M.D., who opined that Plaintiff had a "fair" prognosis, but that working full-time would likely cause Plaintiff's condition to worsen and that Plaintiff would struggle to get along with supervisors at work. AR 1051–52. Dr. Starr also noted marked limitations in Plaintiff's mental functioning and that Plaintiff would miss work at least two days per month. AR 1053–55. The ALJ concluded that Dr. Starr's opinion was "not persuasive" because "[n]o findings were provided to support the described limitations," and "Dr. Starr's records do not support the limitations." AR 23. Indeed, the ALJ noted that mental status exams—performed by Dr. Starr himself—found Plaintiff experienced "very mild dysphoria" and had a "linear thought process, intact cognition and good insight and judgment." AR 23, 2278, 2318, 2340, 2382, 2412. Furthermore, the ALJ noted that Plaintiff had "maintained [his] job for over a year with no issues raised by coworkers or supervisors." AR 19. The ALJ concluded that the limitations described by Dr. Starr are "inconsistent with the claimant's ability to sustain part-time work for over a year and . . . with counseling records, which reflect he has remained stable with medication." AR 23. Plaintiff challenges the ALJ's finding on the basis that she "could only find Dr. Starr's statement unsupported by the evidence when she ignored the evidence prior to 2018." ECF 18 at 10. But the ALJ candidly acknowledges that Plaintiff "has a long history of mental impairments" while noting that "the record reflects improvement since his alleged onset date." AR 21. Indeed, the ALJ chronicles Plaintiff's hospitalizations before noting that "[h]e has not been hospitalized since his alleged onset date." *Id*. And while Dr. Starr continued to use

PAGE 13 – OPINION AND ORDER

Plaintiff's past, pre-onset behavior to predict future performance, Plaintiff's qualified mental health practitioner, looking at Plaintiff's current status, had a more optimistic outlook. On September 19, 2018, Plaintiff's counselor noted that Plaintiff "has made major strides over the past year," that his "mental health symptoms have been stable with medication . . . [and h]e has experienced no hospitalization, no manic episodes and only some depression." AR 2347. At this point, Plaintiff was putting off returning to work to spend time with his ill father. *Id*. A year later, on October 30, 2019, the same counselor noted Plaintiff's continued stability and that "[l]ater this month he will have maintained work at Walgreens for a full year." AR 2436. This Court finds that the ALJ's determination that Dr. Starr's opinion was unpersuasive based on its lack of support from and inconsistency with the record is supported by substantial evidence.

Second, the ALJ's finding that the opinions of S. Propper, M.D. and Susan South, Psy.D. were persuasive is also reasonable. Dr. Propper and Dr. South opined that Plaintiff, when stable on medication, is able to maintain CPP without significant limitations. AR 297. They further opined that Plaintiff is able to understand detailed instructions, but may struggle to remember them if not provided a written copy. *Id.* They also concluded Plaintiff should work in an environment with limited contact with others to minimize Plaintiff's anxiety. AR 297–98, 329–30. The ALJ found these opinions persuasive because "[t]hey are supported with explanation and are consistent with the treatment record." AR 23. The ALJ noted that Plaintiff "has remained stable on medications" since December 2017 and "has maintained work and is independent in personal care, using public transportation, shopping, cleaning and attending appointments." *Id.* Accordingly, substantial evidence supports the ALJ's finding that the opinions of Dr. Propper and Dr. South were persuasive, supportable, and consistent with the record.

Based on all the medical evidence in the record, the ALJ reasonably concluded that Plaintiff was stable on medication during the relevant time period—that is, since his alleged onset date. Of course, if Plaintiff's mental health condition worsens, he may file a new application for benefits. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 n.1 (9th Cir. 2001) (citing *Sanchez v. Secretary of HHS*, 812 F.2d 509, 512 (9th Cir. 1987)). But the ALJ was not bound to agree with Dr. Starr that, just because Plaintiff had suffered psychotic breaks requiring hospitalization in the past, he was disabled in the present and into the future.

**D. The ALJ Did Not Err in Formulating Plaintiff's RFC**

    **1. Legal standards**

The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p (S.S.A. 1996), 1996 WL 374184, at *1. The RFC assessment "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. When determining a claimant's RFC, ALJs should assess "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* at *2.

    **2. Analysis**

Plaintiff argues that the ALJ erred in formulating his RFC because the ALJ "failed to assess whether Plaintiff is capable of working on a 'regular and continuing basis,' even though he suffers from debilitating bipolar I disorder causing repeated hospitalizations, jail-time, and involuntary holds." ECF 18 at 12. Plaintiff further argues that the RFC was erroneously formulated because the record established that he "cannot perform his employment without an

PAGE 15 – OPINION AND ORDER

accommodation for breaks or part-time work to prevent further psychotic breaks." *Id*. at 13. Finally, Plaintiff argues that his moderate limitation in concentration, persistence, and pace, along with his need for unscheduled breaks, would preclude "the quota allowance or assembly-line production the ALJ allowed." *Id*.

The ALJ properly concluded that Plaintiff has the RFC to perform "a full range of work at all exertional levels," but that Plaintiff "is limited to understanding and carrying out simple instructions," and "to no contact with the general public and occasional contact with coworkers and supervisors." AR 20. The ALJ found that Plaintiff's "mental impairments appear well-controlled," as Plaintiff has maintained his job for over a year, and that Plaintiff can maintain concentration and pace without significant limitations. AR 20–23.

Dr. Starr opined that Plaintiff's impairments would cause Plaintiff to be absent from work about twice per month, AR 1055, and Plaintiff's records show that Plaintiff sometimes requires unscheduled breaks two to three times per shift for a couple of minutes each. AR 21, 239, 2443. A VE opined that a need for two unscheduled absences per month and a need to take three unscheduled ten-to-fifteen-minute breaks per shift would be inconsistent with maintaining "competitive employment." AR 243–44. But, as discussed above, the ALJ was justified in excluding Dr. Starr's opinion as unpersuasive, so the portions of the VE's opinion predicated on two absences per month was not controlling. Similarly, the VE's opinion that ten-to-fifteen-minute breaks are incompatible with competitive employment is also not controlling here, because Plaintiff stated that his breaks only last "[a] couple of minutes," AR 239, and the ALJ appropriately noted that Plaintiff has maintained his job for over a year while taking such breaks, AR 21–22.

Plaintiff also argues the ALJ failed to determine whether Plaintiff is capable of full-time work. But the ALJ found that Plaintiff was generally stable and had maintained employment over an extended period of time "with no issues raised by coworkers or supervisors." AR 19. As noted above, "an ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford*, 950 F.3d at 1156. As the ALJ noted, although Plaintiff testified that he could not work more than part-time because of his anxiety, he had reported to his treatment provider that he was working part-time so that he did not lose his Oregon Health Plan. AR 22 (citing AR 2411). The ALJ did not erroneously assert that *because* Plaintiff was able to work part-time, *therefore* he was able to work full-time. Rather, the ALJ reasonably concluded that it was Plaintiff's choice—albeit for the good reason of not losing his health insurance—not to work full-time, rather than an inability to do so because of his disability. These findings support and are consistent with the ALJ's conclusion that Plaintiff's RFC includes the ability to work full-time with a few noted limitations.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 26th day of August, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge